## No. 13,890.

ATCHISON, TOPEKA AND SANTA FE RAILWAY COMPANY *v.*
SCHOOL DISTRICT No. 2, FREMONT COUNTY.
(66 P. [2d] 541)

Decided March 15, 1937.

Messrs. GRANT, ELLIS, SHAFROTH & TOLL, for plaintiffs in error.

Mr. RICHARD E. CONOUR, for defendants in error.

*En Banc.*

MR. JUSTICE YOUNG delivered the opinion of the court.

DECEMBER 17, 1930, one M. E. Hyde instituted an action in the district court of Pueblo county and obtained a judgment—by consent of defendant—against school district No. 2 of Fremont county for $141,857.09. Thereafter, certain taxpayers, plaintiffs in error here, filed a petition in said cause asking for vacation of the judgment and that they be allowed to appear and defend the suit. The petition, among other things, contains the following: That Hyde fraudulently procured a judgment against School District No. 2, Fremont county, Colorado, a public corporation, for $141,857.09, the amount she claimed to be due her as the alleged holder of unpaid warrants of the district aggregating that sum; that the directors entered the appearance of the district and consented to the entry of such judgment; that immediately after procuring judgment, the court in the same cause and on application of plaintiff Hyde, issued an alternative writ of mandamus to compel the directors of said district to levy a tax for the payment of the judgment; that pursuant to stipulation the court made the writ peremptory and in its decree provided for the issuance and delivery to Hyde of funding bonds of the district payable $7,000 annually for twenty years and it ordered an annual tax levy sufficient to pay the bonds as they matured together with interest; that upon the issuance of these bonds plaintiff Hyde satisfied the judgment as it was provided in the judgment should be done; that the bonds were disposed of by one Grigsby, ostensibly for Hyde, but in reality for the school district; that they were purchased

by the State Land Board with monies from the public school fund and it appears are still held by the state of Colorado. The fraud alleged to have been practiced in obtaining the judgment and procuring the mandamus for a levy resulting in the issuance of the bonds, in which fraud it is alleged the directors of the district participated, is set forth in detail in the opinion in the case of *Atchison, T. & S. F. Ry. Co. v. Board of Com'rs,* 95 Colo. 435, 37 P. (2d) 761, which should be read in connection herewith. That case will be mentioned as the tax refund case. It was an action brought in the district court of Fremont county whereby the railway company sought to recover certain taxes paid by it under protest, which taxes were levied by direction of the court by mandamus, for the payment of the judgment or purported funding bonds. In that case this court held the action to recover the taxes involved was merely a collateral attack on the judgment and that even if the judgment was procured by fraud on the part of both plaintiff and defendants it was not void but merely voidable, and therefore not subject to collateral attack.

Being defeated in the tax refund case the railway company and others as taxpayers filed the above mentioned petition in the district court of Pueblo county in the case now under consideration wherein the alleged fraudulent judgment and mandamus for a levy had been procured. Hyde, answering the petition, alleged that the bonds issued to her by the school district in payment and satisfaction of the judgment were transferred to the state of Colorado; that it still holds and owns the same, and she prayed that the state be substituted in the litigation in her place and stead; further praying that no action be taken on the petition until the state had consented to become a party and entered its appearance in the proceedings. On the same date the school district filed a motion to dismiss the petition, alleging among other grounds that the state of Colorado was the holder of the bonds and that the court was without jurisdiction to hear

the petition until the state appeared and consented to become a party. On this motion the court dismissed the petition on the ground that the state is a necessary party to the proceedings. Petitioners bring the cause here on writ of error to have the judgment of dismissal reviewed.

They contend that the judgment in mandamus ordering a levy to pay the money judgment and the so-called funding bonds is void because there is no authority in law for fixing a levy by mandamus to pay a judgment against a school district or for issuing bonds to fund a judgment against a school district; that the only remedy provided is an administrative remedy. Evidently this contention is based on section 5967, C. L. 1921, although that section is not cited in any of the briefs.

It was determined in the tax refund case that even if the bonds are void the judgments were not void and hence not subject to collateral attack. In that case we stated:

"It is said that the money judgment and the mandamus judgment constitute a fraud upon the taxpayers.

"A judgment rendered without jurisdiction is void and may be attacked either directly or collaterally. But where a judgment rendered by a court having jurisdiction over the subject matter and the parties and jurisdiction to render the particular judgment is obtained by fraud or collusion, it is voidable only, not void, and it is binding upon parties and their privies unless and until it is set aside in a direct proceeding brought for that purpose. It cannot be attacked by them in a collateral proceeding such as this is."

██ ██ Both the petitioner railway company and the school district were parties to that case. A judgment declared not to be void on collateral attack certainly cannot be held void when attacked in a direct proceeding. It was germane to the issue therein involved to determine whether the judgments were void and the court having determined that they were not, that fact stands adjudicated.

In the tax refund case the question of whether the state was a necessary party was raised but not determined. In this case it is the sole question presented for determination.

■ Petitioners' theory of the case is that the state is not a necessary party because, as they claim, the district procured a loan directly from the State Land Board, exchanging its so-called funding bonds of the par value of $140,000 for an equivalent amount of money, with which it proceeded to pay to the various warrant holders the amounts of their warrants and interest, excepting $50,000, in fictitious warrants issued to increase the amount of the judgment, which warrants remained with the county treasurer until after judgment was procured and then were cancelled. The $50,000 reflected in the judgment and in the amount received for the bonds by reason of these fictitious warrants was used to pay Grigsby a commission of $7,000 and the remainder went into the general funds of the district. Assuming that the district did participate in the fraud by which the judgments were secured and the bonds issued, and that thereafter it procured the loan directly in exchange for the so-called bonds, the fact remains that these bonds, whatever their effect may be as such, each provides, "this bond is issued pursuant to and as part payment of a judgment of the district court," etc., and "provision will be duly made for the levy and collection of an annual tax sufficient to pay this bond and the interest thereon." The judgment in mandamus provides that "any holder of any of said bonds shall have the right to enforce the provisions of this judgment for the payment of said bonds and the interest thereon." In the tax refund case the court held that if the bonds were void it did not follow that the judgments also were void. In this situation it cannot be doubted that if the bonds have validity such validity must rest on the judgment pursuant to which they were issued. If they are void as bonds, nevertheless under the terms of the judgment they operate to

give the holder the right *to enforce the provisions of the judgment* for the payment of the bonds and interest. In the tax refund case, supra, at page 440, we said: "As we have seen, it is alleged in the complaint that the judgment in the mandamus suit ordered a levy to pay, *not* the bonds, but the *money judgment*, and that the levy of the taxes, a part of which the plaintiff seeks to recover, was made 'pursuant to said judgment order.' If the plaintiff were right in its contention that the bonds issued to 'represent' the judgment are void, it would not entitle the plaintiff to a return of taxes paid, for, if the bonds were void, the delivery thereof to the judgment creditor would not satisfy the money judgment which would remain in full force and effect, and the peremptory mandamus to levy taxes to pay the same, and the levy made in obedience thereto, would remain unimpaired." And at page 444: "In this collateral proceeding we cannot pass upon the validity of the warrants upon which the money judgment against the district was based, or review either the money judgment or the judgment in the mandamus case. In each of those cases the court had jurisdiction of the subject matter and of the parties and jurisdiction to enter the particular judgment; hence it is binding upon the district and its taxpayers unless and until it is set aside in a direct proceeding brought for that purpose."

█ █ Petitioners contend that the state, as the holder of the bonds, cannot be considered as an assignee of the judgments or of the tax levy ordered to pay the judgment. Whatever may be the exact status of a holder of these bonds, the state having paid full value for them, reimbursement for monies so expended depends on the continued existence of the judgments, and the judgments having been determined by this court to be such as the district court had power to render and therefore not void, we are of the opinion that the state has a vested interest in the judgments such that it cannot be deprived of it in a proceeding to which it is not a party. Petitioners say that if we so hold we must disregard the case of

*Jotter v. Marvin*, 63 Colo. 222, 165 Pac. 269. We think that case is not controlling. There the defendant in an action to quiet title, in which judgment had been rendered against him, by motion attacked the judgment as *void* for lack of any service of process on him. The ruling was adverse to him. During a time when no stay of execution had been asked or granted the plaintiff transferred the land to another who sold it to one Hartjoy, the latter paying full value for it. In this court plaintiff filed a plea in abatement, setting up that he had sold the land to Hartjoy and that he was a necessary party to the proceeding attacking the judgment as void. The sufficiency of the plea was questioned by demurrer and the demurrer was sustained. In that opinion we said: "He [defendant in the trial court] alleges that he never has had, and seeks to have, his day in court concerning it. If he has not had it, then a judgment that he has ought not to be allowed to stand against him simply because the defendant in error, after securing the judgment, has conveyed the land to another who, in turn, has conveyed it to an innocent purchaser.

"Whether, if ultimately successful in sustaining his title, the plaintiff in error can secure the land from Mr. Hartjoy, because transferred to him as an innocent purchaser when no stay of the judgment was pending, and before a writ of error was sued out, will not now be determined. Mr. Hartjoy is not a party to this action. In certain cases this court has held that an innocent purchaser, etc., during this period, relying upon the judgment, gets a good title."

The court in the opinion, on page 224 thereof, mentioned that the contention of defendant was that the judgment against him was *void* and that he might have attacked it collaterally in a suit against Hartjoy to recover the land had he seen fit to do so, and it is pointed out further that the motion to vacate the judgment was filed *before* the land was transferred by the plaintiff. In the instant case the same judgments here in question

were adjudicated not to be void in the refund case, which was brought by the same railway company as plaintiff which appears here as petitioner and in which the same school district was a party. In that case the question of whether the judgment was void was germane to, and determinative of, the issue there involved. Moreover it was held that the plaintiff railway company in that case, as a taxpayer, was in privity with the school district which entered its appearance and consented that the judgment be entered. It further appears that the petition to vacate the judgments in the instant case, as was also the collateral attack in the case against the commissioners and the district in the tax refund case, was made *after* the state had acquired the bonds and had become interested in the maintenance of the judgments. In the instant case the maintenance of the judgment is essential to the preservation of any rights of the state. If the bonds, and not the judgment, be considered the res involved in this proceeding, the judgment is an absolute and inseparable essential to any value or right in the res. In the Jotter-Marvin case the res was land and the purchaser might have acquired it under circumstances such that he had a full right to retain and enjoy it notwithstanding the judgment might be held to be wholly void. Had an action been brought in that case to recover the land itself on the ground that the judgment was void we have no doubt that in such an action Hartjoy would have been an indispensable party. The petition of plaintiffs in error in this case is in effect a proceeding in equity, not to recover a specific res, but, if decided in petitioners' favor, having the effect to render a res of no possible value to the holder of it—in other words to destroy the rights that the holder has by virtue of judgments heretofore determined to be not void. Equity looks to substance rather than form and rights cannot be destroyed unless and until the one who possesses them has had his day in court. The state is a necessary party to the proceeding before us.

The judgment is affirmed.

Mr. Chief Justice Burke dissents.

Mr. Justice Bouck specially concurs.

Mr. Justice Bouck, specially concurring.

The state of Colorado was and is the owner of whatever rights arose under the judgment which the plaintiffs in error sought to set aside herein. I think the judgment of affirmance is proper on the ground that the state was not and is not a party here. My concurrence is accordingly limited. I express no opinion on the other matters discussed by counsel or in the opinion of this court.